

■ The next question is whether plaintiff made a completed sale of his interest in 1919 and derived a taxable gain of $121,701.25 thereon. In our opinion there was no completed sale in 1919 and no taxable gain was derived by plaintiff in that year. At most, plaintiff only agreed in 1919 to sell his interest in the tangible and intangible assets of the partnership to a corporation thereafter to be organized. He sold nothing to the partners. They did not obligate themselves to pay him any amount for his interest, but only to have the corporation, if and when it should be organized, issue him stock. The corporation was not completely organized until 1920 and plaintiff received nothing which could constitute income until January 2, 1920.

The defendant contends that if the commissioner was wrong in taxing the amount of $121,701.25 to the plaintiff as his distributive share of the partnership earnings, there was a completed sale by him of his partnership interest in 1919 which gave rise to a gain derived in that year; that the partnership had no intangible assets of any value, and since plaintiff employed the accrual method of accounting, he was taxable upon the profit of $121,701.25 representing the difference between his interests in the tangible book capital and $450,000 at which he sold.

■ It is not clear whether plaintiff employed the accrual or cash receipts and disbursements method of accounting, but we deem it unnecessary to decide this point. It is clear from the provisions of the agreement of November 18, 1919, and the facts, that a completed sale was not made in 1919. The articles of incorporation were filed with the Secretary of State on December 31, 1919, but this did not complete the sale. The parties to the agreement of November 18, 1919, were not authorized to act and did not act for the corporation to be formed, and even after the corporation came into existence it was not bound by the agreement until it took action thereon. Morse v. Tillotson & Wolcott Co. (C. C. A.) 253 F. 340, 1 A. L. R. 1485; Younker Bros., Inc., 8 B. T. A. 333. The corporation acted on January 2, 1920, at which time it authorized and issued to plaintiff $450,000 par value of preferred stock. If a gain was derived by plaintiff, it accrued and was received by him on that date. The year 1920 is not before us.

Plaintiff is entitled to recover. Judgment for $44,194.79 will be entered in his favor with interest. It is so ordered.

F. Carroll Taylor, of New York City (Louis H. Porter, of New York City, on the brief), for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Ottamar Hamele, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The Catskill Cement Company was affiliated with plaintiff and a consolidated profits tax return for 1917 was filed for this and other affiliated corporations.

The facts establish that the gas engine plant, including the building in which it was housed, was installed and constructed in 1914 at a cost to the Catskill Company of $454,696.78. It was abandoned and its use discarded early in 1917 before the sale and transfer by the Catskill Company of its entire business and assets to the plaintiff on March 10, 1917. The building, which was included in the aforementioned cost, had a fair market value of $24,850.60 at the time the gas power plant was abandoned and the gas engines and equipment had a salvage value at the time of the abandonment of $15,000. Therefore, upon the abandonment of the gas power plant, the Catskill Company sustained a loss of the difference between the original cost, less depreciation of 5 per cent. for two

years on the gas engines and equipment, and the salvage value, or $369,376.51. This loss was in no sense intercompany and was therefore a proper deduction in determining the consolidated net income of the group for excess-profits tax purposes.

The fact that the power plant was erected and installed by the plaintiff which owned all the stock of the Catskill Company did not change the situation, since, at that time, the corporations were separate entities and the amount expended in construction and installation of the power plant was an expenditure by the Catskill Company. The fact that it borrowed the money from the plaintiff does not change the situation. Legal ownership of all of the assets of the Catskill Company was in that company until the sale and transfer on March 10, 1917. The fact that the deeds recite that the transfer was effective as of January 1, 1917, is of no significance in connection with the question involved. The Catskill Company was not dissolved until November, 1918.

The above deduction, which we hold was allowable from the consolidated net income for excess-profits tax purposes, results in no excess-profits tax liability. The plaintiff is therefore entitled to recover, and judgment in its favor for $20,028.90, with interest, will be entered. It is so ordered.

## ACME COAL CO. v. UNITED STATES.
### No. H–299.

Court of Claims.
Nov. 3, 1930.